UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-19-TBR

GEORGE DANIEL,                                                                          PLAINTIFF

v.

LINDSAY HARPER, et. al.,                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon four separate motions. Plaintiff George Daniel, proceeding *pro se*, has filed two Motions for Summary Judgment: one against Defendants Lindsay Harper and Matthew Johnston, [DN 30], and one against Defendant Bradley Boyd. [DN 31.] Harper and Boyd have filed a Motion for Summary Judgment against Daniel. [DN 32.] Likewise, Boyd too has filed a Motion for Summary Judgment against Daniel. [DN 35.] For the following reasons, the Court will order the parties to brief the matter more fully before rendering a decision on these Motions.

**I. DISCUSSION**

The principal argument advanced by all three Defendants in support of their motions is that Daniel has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995. 42 U.S.C. § 1997e(a). The PLRA demands that, prior to inmates seeking legal redress in federal court, they must exhaust all administrative remedies within the jail or prison in which they reside. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Importantly, though, a prisoner need only exhaust those administrative remedies which are actually *available* to him. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (explaining that an inmate "need not exhaust

unavailable [remedies.]"). The Supreme Court laid out three scenarios in which otherwise available remedies become unavailable:

1) Where the grievance procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859.

2) Where the "administrative scheme…[is] so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.*

3) Where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In the present case, there appears to be some confusion as to the proper grievance process, whether and where this process is posted and/or available in the Christian County Jail, and whether the inmate handbook provides incomplete information regarding the grievance process. Specifically, Defendants attach as an exhibit to their instant Motions a two-page description of the grievance process, including the proper appeals process, which is apparently necessary for exhaustion purposes. [*See* DN 32-33; 35-23.] However, in his Reply to his own Motion for Summary Judgment, Plaintiff attaches a photocopied page purportedly from the inmate handbook, which addresses the grievance process but mentions nothing of how to appeal or even that an appeals process exists. [*See* DN 40-1, at 4; DN 41-1, at 4.]

The grievance procedure to which Defendants cite provides as follows:

Any prisoner shall be allowed to file a grievance at such time as the prisoner believes he or she has been subject to abuse, harassment, abridgment of civil rights or denied privileges specified in the posted rules. (Grievances must be restricted to incidents which occur while the prisoner is in custody of the center.) No prisoner shall fear against reprisal for initiating grievance procedure in an attempt to resolve legitimate complaints.

501 KAR 3:140, § 7. [*See* DN 32-33.] In addition to this general description of the Jail's grievance policy, there are also detailed procedures, which lay out the manner in which prisoners should go about filing such grievances, including the appeals process. Specifically, the grievance policy to which Defendants cite provides the following: "If not satisfied with the disposition of the grievance by the Jailer, the inmate shall be furnished paper, pencil, and an envelope in order to set forth his grievance in writing and his objection to the disposition of the grievance. The inmate's appeal letter will then be forwarded to the Department of Corrections." [*Id.* at 2.]

Conversely, the handbook page to which Daniel cites provides as follows:

> 1. Any inmate will be allowed to file a grievance if he/she believes he/she has been subjected to abuse, harassment, a violation of civil rights or has been denied privileges without justification.
> 2. Such grievances shall be in written form on any type of paper, addressed to the Jailer and sealed in an unstamped envelope or handed [to] jail staff.
> 3. An inmate shall not fear against reprisal from initiating grievance procedures in an attempt to resolve legitimate complaints.

[DN 40-1, at 4.] Noticeably absent is information regarding the appeals process for grievances. The Court is aware that the entire handbook is not attached to Daniel's Reply, and that the appeals process may be laid out elsewhere. However, given that there is a great deal of confusion as to the actual grievance process and, more importantly, its actual availability to Daniel, the Court will order both sides to brief this issue more fully before it rules on the four pending Motions for Summary Judgment.

## II. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1) Defendants Harper, Johnston and Boyd **SHALL** file briefs with the Court addressing the issues above, focusing in particular on the discrepancies between the policy to which they

3

cite and the handbook page to which Daniel cites.  These should be filed with the Court **NO LATER THAN November 10, 2017**.

2) Plaintiff Daniel **SHALL** file one Response to these briefs **NO LATER THAN fourteen (14) days after entry of Defendants briefs above.**

3) There will be no reply briefs filed.

**IT IS SO ORDERED.**

cc:      George Daniel, *pro se* plaintiff
Christian County Jail
410 W. Seventh St.
Hopkinsville, KY 42240

Counsel of Record